UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEGAN WILLIAMS,

    Plaintiff,

v.                                              Case No: 8:19-cv-1872-T-30AEP

INTERNAL CREDIT SYSTEM, INC. and
TRIUMPH FIT, INC.,

    Defendants.

## ORDER

THIS CAUSE is before the Court on the parties' Motions for Summary Judgment (Dkts. 60-64) and the respective Responses in Opposition (Dkts. 67-71). After careful review of the record and applicable case law, the Court concludes that Defendants Triumph Fit, Inc. and Internal Credit System, Inc. are entitled to judgment in their favor on all of Plaintiff Megan Williams's claims of debt collection violations. Although Williams attempts to manufacture a genuine issue of fact, her deposition testimony makes clear that she did not cancel her gym membership with Triumph Fit. Despite her contentions that the debt collection activity caused her emotional distress, loss of sleep, anxiety, embarrassment, and loss of reputation, the two letters at issue and small number of telephone communications did not "harass" her and were not obscene and/or profane under binding law. Further, the record is undisputed that Internal Credit System made no statement holding itself out as an attorney. And, finally, other than offering speculation

about Defendants' true intentions, Williams has not shown a genuine issue for trial on her claim that Internal Credit System made a baseless threat to file a lawsuit against her.

## BACKGROUND

This case is premised on Williams's claim that Triumph Fit improperly froze, instead of cancelling, her gym membership. According to her Second Amended Complaint: "In or around January of 2019, Ms. Williams properly cancelled her gym membership with [Triumph Fit] by going in-person to cancel." (Dkt. 31 at ¶31). "Despite Ms. Williams [sic] proper cancellation" of her gym membership, her account was "improperly" frozen and then reversed in February of 2019. *Id.* at ¶32. Williams was then charged the monthly membership fee in February 2019, which caused her to incur an outstanding balance, the debt at issue in this case.

The Second Amended Complaint alleges that ABC Financial Services, LLC, Triumph Fit's billing company, began calling Williams's cellular telephone in connection with collecting the unpaid membership dues and sent her one letter dated March 24, 2019, seeking collection of the debt. ABC or Triumph then transferred her account to Internal Credit, a debt collector, who attempted to collect the debt even though it had been "properly cancelled."

With respect to Triumph Fit, who Williams refers to throughout her Second Amended Complaint as the "Debt Owner," Williams claims:

> Debt Owner violated Fla. Stat. § 559.72(9) by misrepresenting the Debt as collectible and owing in the Collection Letters and collection calls to Ms. Williams on its behalf after Debt Owner improperly froze the Account and then reversed the Account freeze causing the Debt to accrue, when Debt Owner knew that Ms.

Williams had properly cancelled the Account and therefore should not have owed the Debt.

(Dkt. 31 at Count IV). Williams also claims that Triumph Fit is vicariously liable for ABC's and Internal Credit's debt collection violations.

The majority of Williams's claims are against Internal Credit as follows, who she refers to as "Debt Collector 2." In Count I, the only Count alleging violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), she avers:

> a. Debt Collector 2 violated 15 U.S.C. § 1692d(1) by threatening to sue Ms. Williams if she did not satisfy the alleged Debt when Debt Collector had no intent to file such suit.
> b. Debt Collector 2 violated 15 U.S.C. § 1692d (2) by using obscene or profane language in the course of collecting the alleged Debt during its phone call with Ms. Williams and her mother.
> c. Debt Collector 2 violated 15 U.S.C. § 1692e (2)(A) by misrepresenting the legal status of the alleged Debt as collectible and owing when Ms. Williams had properly cancelled the Account.
> d. Debt Collector 2 violated 15 U.S.C. § 1692e (3) by the [sic] falsely representing itself as an attorney during its call with Ms. Williams and her mother, and in its voicemail dated May 15, 2019 regarding a "legal matter" when in fact Debt Collector was not an attorney.

(Dkt. 31 at Count I).

In Count II, which includes similar violations against Internal Credit under the Florida Consumer Collection Practices Act ("FCCPA"), she claims:

> a. Debt Collector 2 violated Fla. Stat. § 559.72(7) by willfully engaging in conduct that can reasonably be expected to harass Ms. Williams and her mother during its phone call with Ms. Williams and her mother, the threats in its May 15, 2019 voicemail regarding "legal action," and the content of Collection Letter 3.
> b. Debt Collector 2 violated Fla. Stat. § 559.72(8) by using obscene or profane language in the course of collecting the alleged Debt during its phone call with Ms. Williams and her mother.

      c. Debt Collector 2 violated Fla. Stat. § 559.72(9) by misrepresenting the Debt as collectible and owing when Debt Collector 2 knew that Ms. Williams had properly cancelled the Account.
      d. Debt Collector 2 violated Fla. Stat. § 559.72(9) by misrepresenting the intent to pursue legal action in its May 15, 2019 voicemail and its Collection Letter 3 when no such intent existed.
      e. Debt Collector 2 violated Fla. Stat. § 559.72(10) by falsely representing itself as an attorney in its call with Ms. Williams and her mother, and its May 15, 2019 voicemail when in fact Debt Collector was not an attorney.
      f. Debt Collector 2 violated Fla. Stat. § 559.72(12) by falsely representing itself as an attorney in its call with Ms. Williams and her mother, and its May 15, 2019 voicemail when in fact Debt Collector was not an attorney.

(Dkt. 31 at Count II).

Williams also included a FCCPA claim against ABC in Count III of the Second Amended Complaint but subsequently settled this claim. ABC was dismissed from this action with prejudice.[1]

Having discussed Williams's allegations, the Court turns to her deposition testimony, which paints a much different picture. Williams testified that she entered into a month-to-month membership agreement with Triumph Fit at the beginning of October 2018. Around the end of October 2018, she went to the gym to cancel her membership because she was moving to a place that had a gym and was persuaded to freeze her account. She knew the freeze would be in effect until February 2019. In or around January 2019, she texted Amanda Reichner, a Triumph Fit manager she had communicated with before,

---

[1] Triumph Fit filed cross claims against ABC and Internal Credit, essentially seeking indemnity to the extent Triumph Fit was found vicariously liable for their actions. Triumph Fit dismissed the claim against ABC without prejudice and filed a motion for summary judgment with respect to its claim of indemnity against Internal Credit. The motion for summary judgment regarding indemnity is moot based on the Court's ruling that neither Triumph Fit nor Internal Credit violated the FDCPA and FCCPA as a matter of law.

and stated she wanted to cancel the membership. She sent Amanda approximately four text messages that went unanswered. Unbeknownst to Williams, Amanda was no longer employed at Triumph Fit.

Specifically, Williams testified:

Q. When you left the club after discussing it
with the gentleman you can't recall his name, you left
the club with a freeze on your account. That was your
understanding, correct?
A. Yes, sir. And may I also state that I assumed
that it would -- I could cancel it at any time, because
they had known that I had gone in and canceled it, it
was frozen, I was not paying for it, and I was assertive
that I did not want the membership any longer and that I
planned on canceling it.
Q. And then you planned on canceling. You knew
the billing would start back up on February 1st,
pursuant to your text with Amanda, right?
A. Yes, sir.
Q. So if the billing was going to start back up
on February 1st, your account wouldn't have been
canceled at that time, would it?
A. No, sir. It would be unfrozen.
Q. Okay. So when you left on -- end of October,
with your leaving the club, you didn't object to the
freeze at that point; you understood you had a freeze,
and you left the club?
A. Yes, sir.
Q. So on February 1st, you knew that the freeze
was going to be lifted, right?
A. Yes, sir.
Q. I guess, to use your term, the freeze would be
reversed, is that -- are we saying the same thing when
you're alleging that it's reversed and lifted? Is that
your understanding, that it's the same?
A. Yes, that they would decide to start charging
my account again.
Q. On February 1st?
A. Yes, sir.
Q. Okay. And before February 1st, your texts

5

>with Amanda, the four texts that went unanswered before
>February 1st, did you do anything else to ensure that
>the account was actually canceled?
>MS. DIAMOND: Objection. Asked and
>answered.
>Ms. Williams, you may answer it.
>A. No, I did not.

(Plaintiff's Deposition at 46:4–47:20).

Later in her deposition, she testified that she did not send a written cancellation request, which was required under her membership agreement:

>Q. Do you see where it says – it's the second
>sentence in that second paragraph – "Renewable terms
>may be canceled at any time provided a 30-day written
>notice is delivered to the club's address or their
>designated billing company"? Do you see that?
>A. Yes.
>Q. Okay. And those are your initials again right
>underneath that provision?
>A. Yes.
>Q. Okay. So did you send a written notice to
>either the club's address or to the designated billing
>company, ABC, about canceling your membership?
>A. No, ma'am.

*Id.* at 73:9-21.

Despite this testimony, Williams maintains that Triumph Fit had actual knowledge of her cancellation. She filed two motions for summary judgment on the issue of liability for the alleged FDCPA and FCCPA violations against Triumph Fit and Internal Credit. Triumph Fit and Internal Credit filed motions for summary judgment as well, arguing that there is no liability as a matter of law. The Court will discuss the record in more detail in the context of the specific alleged violations.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior*

*Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

### I. Whether Triumph Fit Had "Actual Knowledge" that Williams Cancelled the Debt?

The only direct claim against Triumph Fit is under Fla. Stat. § 559.72(9), which states that a person cannot: "Claim, attempt, or threaten to enforce a debt when such person *knows* that the debt is not legitimate or assert the existence of some other legal right when such person *knows* that the right does not exist." (emphasis added). Therefore, there are three elements: an illegitimate debt, a threat or attempt to enforce that debt, and actual knowledge that the debt is illegitimate. *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008).

Triumph Fit argues that the record is undisputed that it did not threaten or attempt to enforce the subject debt. It is not a collection agency and it did not make any calls to Williams or send her any communications regarding the debt. The Court agrees. Moreover, the record is undisputed that Triumph Fit believed the debt was legitimate and, even assuming it was not as Williams contends, Triumph Fit did not have actual knowledge that it was illegitimate.

The Court underscores that the crux of Williams's claim against Triumph Fit is that Triumph Fit improperly froze her account when she directed Triumph Fit to cancel her membership. But, as discussed further above, Williams admitted that she knew her account was frozen and that it would be un-frozen as of February 1, 2019, which would mean that her dues would be charged on a monthly basis from that point going forward. Williams also admitted that she did not deliver a written cancellation notice. Williams sent unanswered text messages to Amanda and apparently assumed those texts were sufficient to cancel the membership. Williams took no additional steps to cancel her membership. Setting aside the reasonableness of Williams's actions, it is undisputed that Triumph Fit lacked actual knowledge, especially because the texts were sent to a person who was no longer employed at Triumph Fit. Accordingly, Triumph Fit is entitled to judgment in its favor on Count IV. This ruling and the Court's conclusion (discussed below) that Internal Credit is entitled to summary judgment moot the remaining arguments in Triumph Fit's motion.

## II. Whether Internal Credit's Communications Violated the FDCPA or the FCCPA?

As outlined above, Williams alleged a slew of FDCPA and FCCPA violations against Internal Credit based on two letters (one sent directly from Internal Credit and one sent from Internal Credit's attorney) and a few telephone communications. Many of these violations overlap. The violations related to the alleged illegitimate debt are not established as a matter of law for the reasons stated with respect to Triumph Fit: there is

no evidence that anyone, including Internal Credit, had knowledge that Williams's debt was invalid.

With respect to Internal Credit, the record reflects that Internal Credit is a debt collector based in Durham, North Carolina. Internal Credit contracts with gyms, including Triumph Fit, to collect delinquent membership accounts. Internal Credit has no involvement with the actual gym memberships or the cancellations. Internal Credit's role is to attempt to collect on the accounts that the gym identifies as valid and past due. Ted Lachman is the sole owner of Internal Credit and the only Internal Credit employee who communicated with Williams.

The remaining claims against Internal Credit are that it threatened to sue Williams when it had no intention of doing so, that Lachman falsely represented he was an attorney, that Lachman used obscene or profane language in the course of collecting the alleged debt, and that Internal Credit willfully engaged in conduct that could reasonably be expected to harass Williams. Williams does not point to a genuine issue of fact that would allow any of these claims to proceed to a jury. The Court pauses to note that the claims related to Williams's mother, Tina Williams, are completely unfounded. Tina Williams admitted that "Internal Credit Systems, Inc. refused to speak to me about the alleged debt." (Dkt. 69-9).

The record reflects that when Internal Credit received the subject debt, it sent one letter to Williams (a second letter was sent by Clayton & Myrick, a law firm working for Internal Credit), made three or four phone calls, and left Williams two voicemails. There is nothing in the letters that violates the FDCPA or the FCCPA. Williams's motion for

summary judgment and related filings mainly focus on her telephone conversation with Lachman and his second voicemail.[2] She also spends a lot of time attacking Internal Credit, emphasizing that Internal Credit lacks written policies and is a "one-man" operation. Williams points out that Lachman does not use a computer, does not have an education beyond High School, does not keep track of any complaints alleged against Internal Credit, and has been sued by other plaintiffs, who argue (like Williams) that his communications violate the debt collection statutes. None of this evidence is material to Williams's claims.

The record reflects that Williams spoke to Lachman on the phone on May 7, 2019. Williams testified that she tried to tell Lachman that she had cancelled her gym membership and he was very rude, loud, and aggressive. Williams testified that Lachman used obscene and profane language as follows:

> A. He told me my credit was going to be destroyed. Why I would do that to myself? "No one can help you now. You are going to court."
> I said that I feel very uncomfortable, attacked, and he said that he felt like he was being attacked and then hung up on me.
>
> . . . .
>
> Q. Okay. Any other examples of obscene and profane language by ICS?
> A. Being told I was going to court. He spoke over me. He was very loud. I felt extremely uncomfortable and distraught. His phrasing of the conversation was very aggressive.
> Q. So is it accurate to say that all your allegations and examples of the obscene or profane

---

[2] Lachman's first voicemail was just a message to Williams to return his call.

11

>   language came from the first call?
>
>   A. Yes, sir.
>   Q. So none of the subsequent calls would have had
>   any obscene or profane language?
>   A. I -- he left me a voicemail saying that we
>   were going to – "We need to discuss a legal matter."
>   That was another moment of feeling stress and anxiety,
>   of not being clear of what was happening.

(Plaintiff's Deposition at 34:3-35:7).

Williams admitted that Lachman never specifically said he was an attorney, or working for a law firm.  *Id.* at 37:10-38:15.   She testified:

>   Q. So the basis of this allegation, falsely
>   representing itself as an attorney, was Ted saying,
>    "I'll take you – you'll be going to court, I'll take
>   you to court"? Something to that effect?
>   A. He said he will be taking me to court.
>   Q. And you took that phrase as him representing
>   himself as an attorney; is that correct?
>   A. Yes, sir.

*Id.* at 38:4-11.

With respect to the voicemail that Lachman left on Williams's phone, the voicemail stated: "This message is for Megan. This is Ted Lachman giving you a call regarding a legal matter.  I spoke to you over a week ago, they asked me to give you one last call before they move forward. My number is 1-877-405-1900."  *Id.* at 35:16-36:20.

The record evidence is undisputed that Internal Credit never threatened to sue Williams.   Internal Credit stated this was a "legal matter," which is an accurate statement because debt collection is a legal matter.  Internal Credit never told Williams in any

communication that Internal Credit would file a lawsuit against her. Indeed, the voicemail referenced above does not contain a threat to sue. The message explicitly states that Lachman is giving Williams one last call before "they move forward."

The letter from Internal Credit's law firm (Dkt. 31-3) did not violate the FDCPA or the FCCPA because it referenced a "possible civil action" if the debt were not settled. There is nothing misleading or deceptive about this language. The letter noted that Internal Credit "may be instructed to take further action," which is not threatening language.

Lachman's statement that he would take Williams to court is also not tantamount to representing himself as an attorney. Indeed, any person can take any other person "to court" simply by filing a lawsuit. This lone statement is insufficient.

Finally, there is no evidence of harassment or obscene or profane remarks as a matter of law. The Eleventh Circuit Court of Appeals has held that claims under 15 U.S.C. § 1692d should be viewed from the perspective of a consumer who is more susceptible to harassment, oppression, or abuse. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985). Taking everything Williams claims as true, Lachman was certainly rude but "merely rude and unpleasant" does not violate the FDCPA or the FCCPA. *See Kelemen v. Prof'l Collection Sys.*, No. 6:09-CV-1639-ORL-28, 2011 WL 31396, at *3 (M.D. Fla. Jan. 4, 2011).

Under *Jeter,* the language used in the instant case does not amount to the level of offensiveness that "might encompass name-calling, racial or ethnic slurs, [or] other derogatory remarks which are similar in their offensiveness to obscene or profane

13

remarks." *Jeter*, 760 F.2d at 1178*; see also Meininger v. Green Tree Servicing, LLC,* No. 8:11-CV-2006-T-33, 2012 WL 1166161, at *4 (M.D. Fla. Apr. 6, 2012) ("In accordance with *Jeter* and its progeny, the Court finds that the terms 'loser' and 'deadbeat' may be considered rude and unpleasant, but do not rise to the level of willfully abusive language similar in offensiveness to obscene and profane remarks required by the FDCPA and FCCPA."). Accordingly, Internal Credit is entitled to judgment in its favor on Counts I and II because it did not violate the FDCPA and the FCCPA as a matter of law.

In sum, Williams requests that the Court "vindicate the egregious violations of Ms. Williams' consumer rights." That is not the Court's role. The Court's role is to view the evidence in a light most favorable to Williams and determine whether there is a genuine issue for trial on any of her claims. Applying that standard, the Court concludes that Williams's consumer rights were not violated as a matter of law. There is no evidence that her debt was invalid. And, while any debt collection is naturally stressful and unpleasant, the debt collection statutes were not enacted to prevent creditors from collecting on debts that they reasonably believe are valid. Ideally, a debt collector would refrain from acting in a rude or unpleasant manner. But the law does not proscribe rudeness and, if it did, the courts would be inundated (as they already are) with lawsuits like the instant lawsuit.

It is therefore ORDERED and ADJUDGED that:

1. Defendant Triumph Fit's Motion for Summary Judgment on Count IV (Dkt. 60) is granted.

2. Defendant Triumph Fit's Motion for Summary Judgment on its cross-claim against Internal Credit (Dkt. 61) is denied as moot.

3. Defendant Internal Credit's Motion for Summary Judgment on Counts I and II (Dkt. 62) is granted.

4. Plaintiff's Motions for Summary Judgment (Dkts. 63 & 64) are denied.

5. The Clerk of Court is directed to enter Final Judgment in favor of Defendant Triumph Fit and against Plaintiff on Count IV of the Second Amended Complaint.

6. The Clerk of Court is directed to enter Final Judgment in favor of Defendant Internal Credit and against Plaintiff on Counts I and II of the Second Amended Complaint.

7. The Clerk of Court is directed to close this case and terminate any motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, this February 27, 2021.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record